# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

ADRIAN MOSS,                          )
                                      )
      Plaintiff,                )
                                      )
      v.                        )     2:19-cv-00084-JAW
                                      )
BROCK SERVICES, LLC,                  )
                                      )
      Defendant.                )

## ORDER ON MOTION TO COMPEL ARBITRATION

A former employer moves to compel arbitration in regard to a former employee's lawsuit asserting claims under the Civil Rights Act of 1964, the Civil Rights Act of 1991, and the Maine Human Rights Act. Concluding the parties clearly and unmistakably delegated the gateway issue of the agreement's validity to the arbitrator, and that the defendant has not waived its right to compel arbitration, the Court grants the motion but stays this case pending the results of the arbitration.

## I. BACKGROUND

### A. Procedural History

On February 22, 2019, Adrian Moss filed a complaint against Brock Services, LLC (Brock Services) asserting claims under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4633 *et seq. Compl.* (ECF No. 1). On April 11, 2019, Mr. Moss moved for an entry of default against Brock Services, which was granted the next day. *Pl.'s Mot. for Entry of Default* (ECF No. 6); *Order Granting Mot. for Entry of Default* (ECF No. 7). On April 22, 2019, Brock Services moved to set aside

the entry of default and requested additional time to answer or otherwise respond to Mr. Moss's complaint. *Def.'s Mot. to Set Aside Default J. and Mot. for Additional Time to Answer or Otherwise Respond to Pl.'s Compl.* (ECF No. 8).[1] On May 8, 2019, Mr. Moss consented to Brock Services' motion to set aside the entry of default and for additional time to respond to his Complaint. *Pl.'s Resp. Consenting to Def.'s Mots. to Set Aside Default and for Additional Time to Answer or Respond to Compl.* (ECF No. 9). On May 9, 2019, the Court granted Brock Services' motion. *Order Granting Mot. to Set Aside Default J.* (ECF No. 10).

On May 30, 2019, Brock Services filed a motion to compel arbitration and to dismiss the lawsuit. *Def.'s Mot. to Compel Arbitration* (ECF No. 13) (*Def.'s Mot.*). On June 20, 2019, Mr. Moss filed an opposition to Brock Services' motion to compel arbitration and to dismiss the lawsuit. *Pl.'s Resp. Opposing Def.'s Mot. to Compel Arbitration and Dismiss or Stay Action* (ECF No. 16) (*Pl.'s Opp'n*). On July 3, 2019, Brock Service filed a reply. *Def.'s Reply in Support of its Mot. to Compel Arbitration* (ECF No. 17) (*Def.'s Reply*). On July 10, 2019, Mr. Moss requested the Court hold oral argument on Brock Services' motion to compel arbitration, which the Court granted the same day. *Pl.'s Req. for Oral Arg.* (ECF No. 18); *Order* (ECF No. 19). On July 26, 2019, the Court held oral argument in this case along with oral argument for

---

[1]     Brock Services moved to set aside a default judgment, but the Clerk had only entered default and judgment had not been entered. *See Pl.'s Mot. for Entry of Default* (ECF No. 6); *Order Granting Mot. for Entry of Default* (ECF No. 7); *Mot. to Set Aside Default J. and Mot. for Additional Time to Answer or Otherwise Respond to Pl.'s Compl.* (ECF No. 8); *Pl.'s Resp. Consenting to Def.'s Mots. to Set Aside Default and for Additional Time to Answer or Respond to Compl.* (ECF No. 9); *Order Granting Mot. to Set Aside Default J.* (ECF No. 10); *Corrected Order Granting Mot. to Set Aside Default J.* (ECF No. 11). The result, however denominated, is the same: Brock Services was allowed to defend the Complaint as if a default had not been entered.

a parallel lawsuit, *Clough v. Brock Services, LLC*, 2:19-cv-00050-JAW. *Min. Entry.* (ECF No. 23).

## B.    Factual Background[2]

Mr. Moss is a resident of Winter Haven, in Polk County, Florida. *Compl.* ¶ 3. Mr. Moss is African American and black. *Id.* ¶ 16. Brock Services is a limited liability company that is "organized under the laws of the State of Texas[.]" *Id.* ¶ 4. Brock Services is "registered with the Maine Secretary of State, and does business in industrial services in Maine, with an office in Portland, Cumberland County, Maine." *Id.* From about August 2010 to July 2015, and from July 2016 to July 2017, Mr. Moss was employed at Brock Services as a scaffold builder. *Id.* ¶ 17.

### 1.    August 2010 to July 2015

While employed at Brock Services, Mr. Moss "was continually subjected to racially demeaning comments and taunts by . . . supervisors, foremen and co-workers." *Id.* ¶ 18. Mr. Moss reported these comments and taunts to Brock Services' Operations Manager, but no action was taken. *Id.* ¶¶ 29-33. As a result of these incidents and the inaction on the part of management, in June 2015, Mr. Moss requested that he be transferred to Brock Services' operations in Florida. *Id.* ¶ 34. In July 2015, Mr. Moss transferred to Florida. *Id.* ¶ 35. In October 2015, Brock Services terminated Mr. Moss's employment. *Id.* ¶ 37.

---

[2]    A motion to compel arbitration is not controlled by Federal Rules of Civil Procedure 12(b)(6) or 12(c) but is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 4. *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011). "[T]he [C]ourt will consider facts alleged in the Complaint as well as the documents submitted by the parties in connection with the motion." *Dickey v. Nat'l Football League*, No. 17-cv-12295-IT, 2018 WL 4623061, at *2 (D. Mass. Sept. 26, 2018) (citing *Soto*, 642 F.3d at 72 n.2)

## 2. July 2016 to July 2017

In July 2016, Mr. Moss moved back to Maine, reapplied, and was hired back by Brock Services. *Id.* ¶ 38; *Def.'s Mot.*, Attach. 1, *Aff. of Amy Beck*, ¶ 4 (ECF No. 13-1) (*Beck Aff.*). As a condition of employment, Mr. Moss signed Brock Services' Dispute Resolution Policy on July 27, 2016. *Beck Aff.* ¶ 5. In relevant part, the Dispute Resolution Policy states:

> Each, every, any and all claims, disputes and/or controversies now existing or later arising between or among the Parties, or between or among the employees of The Brock Group and any other person or entity constituting the Company or a Company Customer, whether now known or unknown, <u>arising out of or related to employment or termination of employment with The Brock Group shall be resolved only through final and binding arbitration</u>, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and not by way of court or jury trial. <u>Such claims, disputes, and/or controversies, without limitation, include those arising out of or relating to: all issues of arbitrability, including but not limited to unconscionability and all grounds as may exist at law or in equity for the revocation of any contract, the interpretation or application of this Dispute Resolution Policy</u> . . ..

*Def.'s Mot.,* Attach. 2, *Dispute Resolution Policy*, ¶ 1 (ECF No. 13-2) (*Arbitration Agreement*) (emphasis added). The Arbitration Agreement also states:

> <u>All Disputes shall be exclusively resolved by final and binding arbitration exclusively conducted under the JAMS Employment Arbitration Rules and Procedures (the "Arbitration Rules") in effect at the time of the arbitration demand</u>; provided however, any party may require, by written notice, that non-binding mediation be conducted in parallel with the arbitration demand process . . ..

*Id.* ¶ 3 (emphasis added).

On November 29, 2016, Mr. Moss signed an Employment Agreement as part of his employment with Brock Services. *Pl.'s Opp'n*, Attach. 3, *Agreement for Full*

*Time Employees* (ECF No. 16-3) (*Employment Agreement*).   The Employment

Agreement states:

> The Company has hired the Employee as a Full Time Employee, either
> on, or prior to, the effective date of this Agreement.  <u>It is expressly
> understood that this Agreement governs the terms and conditions of
> wage and benefit payments of the Employee.</u>  This Agreement is not a
> guarantee of continued employment.  The <u>terms and conditions of the
> Employee's employment are as follows</u> . . ..

*Id.* (emphasis added).  The Employment Agreement further provides,

> 14.   **<u>Miscellaneous</u>** -- <u>This Agreement constitutes the entire
> agreement of the parties, and no amendments or additions to the
> Agreement shall be binding unless in writing and signed by both parties.</u>
> It is expressly understood and agreed that no oral representation,
> promise or condition, whether made before or after the signing of this
> Agreement, shall be binding upon any of the parties hereto.   <u>This
> Agreement cancels and supersedes any prior oral or written agreement
> between the parties pertaining to the subject matter hereof.</u>   This
> Agreement shall be governed in all respects by the laws of the State of
> Maine.

*Id.* ¶ 14 (emphasis added).

Once back at Brock Services, Mr. Moss's "supervisors, and co-workers

repeatedly and continually made racial comments and slurs in Mr. Moss's presence."

*Id.* ¶ 39.  Mr. Moss reported this conduct to the Brock Services' Operations Manager

in February 2017.  *Id.* ¶ 47.   On March 22, 2017, the Brock Services' Operation

Manager "sent an e-mail to supervisors, among other things, relaying a concern about

not treating employees in a 'respectful manner.'"   *Id.* ¶ 49.   Mr. Moss continued to

endure racial comments and belittling.   *Id.* ¶¶ 50-53.   In June 2017, Mr. Moss

informed Brock Services that he wanted to leave its Maine operation.   *Id.* ¶ 55.   Mr.

Moss sent Brock Services' Operations Manager a message explaining why he wanted

to transfer and met with Brock Service's Operations Manager and expressed his concerns and frustrations. *Id.* ¶¶ 58-59. Mr. Moss told "Brock [Services'] Operations Manager that he was so frustrated and angry that he was about to lay his hand on these people who were making racist comments." *Id.* ¶ 59. Brock Services' Operations Manager stated that Mr. Moss should not do that and if he did, he would then have to deal with him. *Id.* ¶ 60. Mr. Moss expressed his frustration that Brock Services' Operations Manager was not addressing the real issue and walked out of the meeting. *Id.* ¶ 61.

In June 2017, "one of Brock [Services'] office administrative staff, told Mr. Moss that his complaints of racial discrimination were not going beyond Brock [Services'] Operations Manager, and said he should talk with Brock [Services'] higher level manager about them." *Id.* ¶ 62. A Brock Services' "manager responded that it was not acceptable, he was sorry that was Mr. Moss's experience, but did not ask him for any names, and showed little concern for the issue Mr. Moss was calling about." *Id.* ¶ 64. Mr. Moss subsequently transferred to a lower paying position in Brock Services' Florida operation and moved to Florida along with his family. *Id.* ¶ 65.

In early September 2017, "Mr. Moss filed a Charge of Discrimination with the Maine Human Rights Commission (MHRC) and Equal Employment Opportunity Commission (EEOC), which he subsequently amended on June 25, 2018." *Id.* ¶ 9. Almost a year later, on August 27, 2018, "the MHRC by unanimous vote adopted the recommendation of its investigator and found reasonable grounds to believe that discrimination in violation of the Maine Human Rights Act occurred in Mr. Moss's

employment by Brock [Services.]"  *Id.* ¶ 10.  "On November 26, 2018, the MHRC issued notice of right to sue on his claims under the MHRA to Mr. Moss."  *Id.* ¶ 11. In early February 2019, "the EEOC adopted the finding of the MHRC of reasonable grounds to believe that discrimination in violation of Title VII occurred in Mr. Moss's employment by Brock [Services]" and Mr. Moss received a notice of right to sue on his claims under Title VII on February 11, 2019.  *Id.* ¶¶ 12-13.

## II.  POSITIONS OF THE PARTIES

### A.  Brock Services' Motion

Brock Services asserts that Mr. Moss "clearly and expressly manifested his assent to be bound by the Dispute Resolution Agreement for the duration of his employment with Brock by signing the Dispute Resolution Agreement Acknowledgement and by commencing employment with Brock."  *Def.'s Mot.* at 5. Brock Services states that Mr. Moss "signed in acceptance of the Agreement, and accepted and continued employment with Brock. Moss is therefore bound by the terms of the Dispute Resolution Policy."  *Id.* at 5-6.  Brock Services argues that Mr. Moss's claims all fall within the scope of the Arbitration Agreement and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* at 6 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, at 24-25 (1983)).

Brock Services avers that Mr. Moss "alleges that he experienced a hostile work environment on the basis of his race and color, resulting in his constructive discharge from employment" in violation of federal and Maine law, and that these claims are

"unambiguously covered" by the Arbitration Agreement as they arise out of or are related to Mr. Moss's employment and/or termination of employment at Brock Services. *Id.* Brock Services says that "the Supreme Court is clear that arbitration agreements committing allegations of employment claims to arbitration are properly enforced under the FAA, specifically including claims based on state and federal human rights laws." *Id.* at 7 (citing cases). Lastly, Brock Services says it has not waived the right to compel arbitration as it acted promptly in filing the present motion as its first responsive pleading and that it did not waive that right by participating in the Maine Human Rights Commission's investigation. *Id.* at 8 (citing cases).

Brock Services asks the Court to dismiss the case as opposed to entering a stay pending litigation until completion of the arbitration. *Id.* Brock Services cites *Boulet v. Bangor Securities Incorporated*, 324 F. Supp. 2d 120, 127 (D. Me. 2004), outlining the advantages of dismissal and asserts that all Mr. Moss's claims are arbitrable and the Court, should therefore dismiss the case. *Id.* at 9.

### B.    Adrian Moss's Opposition

Mr. Moss opposes Brock Services motion to compel arbitration on two grounds. *See Pl.'s Opp'n* at 1.

First, Mr. Moss argues that the Arbitration Agreement was superseded by the subsequent Employment Agreement he signed in November 2016. *Id.* Mr. Moss asserts that the presumption in favor of arbitration does not apply to the initial determination of whether there exists a valid arbitration agreement and that an

arbitration agreement may be revoked like any other contract. *Id.* at 3-4 (citations omitted). Mr. Moss avers that under Maine law, the Employment Agreement is an unambiguous, completely integrated written agreement, and the Court may not resort to extrinsic evidence if the agreement is unambiguous with respect to its level of integration and its existence. *Id.* at 5-6 (citations omitted).

Mr. Moss compares his integration clause to the integration clause in *Handy Boat Service, Inc. v. Professional Services, Inc.*, 1998 ME 134, ¶¶ 11-15, 711 A.2d 1306, where the Maine Supreme Judicial Court found the integration clause precluded consideration of extrinsic evidence. *Id.* at 6. Mr. Moss believes his Employment Agreement "contains the same affirmative unambiguous statements: that it is comprehensive, cannot be modified without joint written agreement, and revokes prior agreements." *Id.* Mr. Moss asserts that the Employment Agreement is unambiguous, clear, and "is a comprehensive statement of terms and conditions of the employment contract between Mr. Moss and Brock." *Id.* at 7. Mr. Moss avers that the Employment Agreement's silence does not demonstrate the requisite intent of the parties to submit their disputes to arbitration *Id.* at 8-9 (citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014); *Dottore v Huntington Nat'l Bank*, 480 Fed. App'x. 351, (6th Cir. 2012); *Applied Energetics, Inc. v. Newoak Capital Mkts., LLC*, 645 F.3d 522, (2d Cir. 2011)). Accordingly, in Mr. Moss's view, since the Employment Agreement is completely integrated and unambiguous and makes no mention of submitting disputes to arbitration, his claims for race discrimination from 2016 to 2017 "should proceed in litigation in this Court." *Id.* at 10.

Second, Mr. Moss contends his claims relating to his employment at Brock Services from 2010 to 2015 are not subject to arbitration, because during that time "he never entered any agreement with Brock to arbitrate disputes[]" and that the subsequent Arbitration Agreement has been cancelled and superseded by the Employment Agreement. *Id.* at 10-11.

Mr. Moss says that there is no legal basis to review the Arbitration Agreement which the parties agreed to cancel. *Id.* at 11. Under Maine law, Mr. Moss asserts, "once found to be completely integrated, a contract supersedes, revokes and supplants any prior agreement." *Id.* Mr. Moss avers that because there is no valid existing arbitration agreement, the Court does not need to determine whether Mr. Moss's claims fail within the parties' Arbitration Agreement or if Brock Services' has waived the right to compel arbitration. *Id.* at 11-12.

Mr. Moss says Brock Services "lacks the prerequisite basis to demand that the Court dismiss or stay this action[]" since it has failed to demonstrate Mr. Moss's claims are subject to arbitration. *Id.* at 12. If the Court disagrees with his position, Mr. Moss alternatively prefers to stay the case. *Id.*

## C.    Brock Services' Reply

Brock Services disagrees. It replies that "the Employment Agreement, by its express terms, only governs the parties' understanding as to Plaintiff's wages and benefits, and does not in any way reference or purport to modify any existing agreement as to the resolution of disputes between the parties." *Def.'s Reply* at 1. Brock Services states "the integration clause provides that the Employment

Agreement is the parties' complete and final expression concerning Plaintiff's wages and benefits." *Id.* at 2. As a result, since the Employment Agreement's subject matter does not include a forum selection directive or an arbitration provision, it cannot cancel and supersede the Arbitration Agreement. *Id.*

Brock Services argues Mr. Moss's cited caselaw for the proposition that the Arbitration Agreement has been superseded is inapplicable because these cases apply where the parties enter in a second, completely integrated agreement which entirely supersedes any prior agreement between the parties as it fully defines their contractual relationship. *Id.* at 3. Here, in contrast, Brock Services says the Employment Agreement's scope is narrow. *Id.* at 4. Brock Services argues the integration clause is similar to the partial integrated clauses in *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.,* 424 F.3d 278 (2d Cir. 2005) and *Sher v. Goldman Sachs*, 2012 WL 1377066, 2012 U.S. Dist. LEXIS 56596 (D. Md. Apr. 19, 2012). *Id.* at 4-5. Brock Services contends a finding that the Arbitration Agreement has been superseded would be an absurd result because "it would make no sense that the parties intended to limit its applicability only to the start of Plaintiff's employment, or intended for the agreement to end upon a change from part-time to full-time status." *Id.* at 5. Brock Services avers that the Arbitration Agreement survives absent an express negation by the parties, which it says has not occurred. *Id.* at 6.

Brock Services disagrees that the Arbitration Agreement does not apply to Mr. Moss's claims that pre-date its execution. *Id.* Brock Services points to the Arbitration Agreement's language of applying "to any dispute, controversy, or claim" "now

existing or later arising . . . whether now known or unknown arising out of or related to employment or termination of employment . . .." *Id.* (internal punctuation and emphasis omitted). Regardless, Brock Services asserts "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Id.* at 7 (citations and internal quotation marks omitted).

## III. LEGAL STANDARD

Pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. Under the FAA, "Congress set a 'liberal federal policy favoring arbitration.'" *Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)). In deciding whether to compel arbitration, a court must determine whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012) (citation omitted).

Arbitration agreements are treated like all other contracts. *Rivera-Colon*, 913 F.3d at 207 (citing *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 443 (2006)). As a result, "principles of state contract law control the determination of whether a valid agreement to arbitrate exists." *Soto-Fonalledas v. Ritz-Carlton San*

*Juan Hotel Spa & Casino*, 640 F.3d 471, 475 (1st Cir. 2011) (citation omitted).  A valid contract under Maine law requires "the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party."  *Campbell v. First American Title Ins. Co.*, 644 F. Supp. 2d 126, 136 (D. Me. 2009) (citation omitted).

## IV.  DISCUSSION

The parties dispute whether the Employment Agreement supersedes the Arbitration Agreement.  In reviewing the Arbitration Agreement's language, however, whether the Employment Agreement supersedes and invalidates the Arbitration Agreement is a secondary question.  The first question and the one that resolves this motion is who decides whether the claims are arbitrable.  The Court must determine if Arbitration Agreement delegates the authority to determine if the Arbitration Agreement has been superseded to the arbitrator rather than the Court.  If so, the Court must then decide whether this delegation provision provides an arbitrator the authority to decide the validity of the Arbitration Agreement as to Mr. Moss's 2016 to 2017 claims as well as his 2010 to 2015 claims.

Analyzing the language of the Arbitration Agreement, the Court concludes that Arbitration Agreement's delegation provision directs an arbitrator, rather than this Court, to determine the validity of the Arbitration Agreement as to Mr. Moss's 2016 to 2017 claims as well as his 2010 to 2015 claims.

### A.  Existence of a Valid Arbitration Agreement

### 1. Delegation

Arbitration is a matter of consent and contract. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Courts must make threshold determinations as to whether parties have agreed to submit particular matters to arbitration. *Howsam*, 537 U.S. at 83. Generally, the "question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id.* (internal quotation marks and emphasis omitted) (citation omitted); *see also Johnson v. Polaris Sales, Inc.*, 257 F. Supp. 300, 305 (D. Me. 2003) (discussing that arbitrability questions generally fall into two categories: whether a valid arbitration agreement exists and the scope of an arbitration agreement). "For such gateway questions, a court 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Patton v. Johnson*, 915 F.3d 827, 835 (1st Cir. 2019) (quoting *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 69, n.1 (2010) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995))). Clear and unmistakable "pertains to the parties' manifestation of intent, not the agreement's validity." *Rent-A-Center*, 561 U.S. at 69 n.1; *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016) ("The parties to a contract may agree to have an arbitrator, rather than a court, determine whether the contract's arbitration agreement is enforceable").

Thus, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the

parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (internal quotation marks and citations omitted); *Rent-A-Center*, 561 U.S. at 68-69. This is generally accomplished by a delegation clause, which is an "agreement[ ] to arbitrate threshold issues concerning the arbitration agreement." *Danley v. Encore Capital Grp., Inc.*, 680 Fed. App'x. 394, 395-96 (6th Cir. 2017) (citation omitted). A challenge to the entire contract or to another provision within the contract "does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70. An arbitration provision is severable from the remainder of the challenged contract even where "the underlying contract is itself is an arbitration agreement." *Id.* at 72. That is because, "[a]pplication of the severability rule does not depend on the substance of the remainder of the contract. Section 2 operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce." *Id.*

The severability rule applies to delegation provisions. *Id.* ([U]nless the delegation provision [is] specifically [challenged], we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator"). Thus, if the record shows a clear and unmistakable intent by the parties to delegate to an arbitrator questions about the validity of an arbitration agreement, the Court must follow the terms of the contract. *Henry Schein*, 139 S. Ct. at 529; *Rent-A-Center*, 561 U.S. at 72; *but see Foss v. Circuit*

*City Stores, Inc.*, 477 F. Supp. 2d 230, 235 (D. Me. 2007) (whether a contract was ever

*formed* is for a court to decide) (collecting cases) (emphasis added).

The Arbitration Agreement provides in part:

> <u>Each, every, any and all claims, disputes and/or controversies now</u>
> <u>existing or later arising between or among the Parties</u>, or between or
> among the employees of The Brock Group and any other person or entity
> constituting the Company or a Company Customer, whether now known
> or unknown, arising out of or related to employment or termination of
> employment with The Brock Group <u>shall be resolved only through final</u>
> <u>and binding arbitratio</u>n . . . . <u>Such claims, disputes, and/or controversies,</u>
> <u>without limitation, include those arising out of or relating to: all issues</u>
> <u>of arbitrability, including but not limited to unconscionability and all</u>
> <u>grounds as may exist at law or in equity for the revocation of any</u>
> <u>contract, the interpretation or application of this Dispute Resolution</u>
> <u>Policy</u> . . ..

*Arbitration Agreement* ¶ 1. The Arbitration Agreement delegates "all issues of

arbitrability, including but not limited to unconscionability and all grounds as may

exist at law or in equity for the revocation of any contract, the interpretation or

application of this Dispute Resolution Policy" to arbitration. *Id.* The Arbitration

Agreement also directs that "[a]ll disputes shall be exclusively resolved by final and

binding arbitration exclusively conducted under the JAMS Employment Arbitration

Rules and Procedures . . . in effect at the time of the arbitration demand." *Id.* ¶ 3.

Mr. Moss does not specifically challenge this delegation provision or assert that

the Arbitration Agreement was never formed. Rather, Mr. Moss argues that the

Employment Agreement superseded the entire Arbitration Agreement and therefore,

no valid agreement to arbitrate exists between himself and Brock Services. Given

the Arbitration Agreement's direct and broad delegation language, the Court

concludes that it demonstrates a clear and unmistakable intent to have an arbitrator decide whether the Arbitration Agreement has been superseded and remains valid.

Black's Law Dictionary defines "arbitrability" as "[t]he status, under applicable law, of a dispute's being or not being resolvable by arbitrators because of the subject matter." *Arbitrability*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Kristian v. Comcast Corp.*, 446 F.3d 25, 42 (1st Cir. 2006) (discussing the typical questions of arbitrability). In *Rent-A-Center*, the delegation provision directed that it was for an arbitrator to decide "any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including . . . any claim that all or any part of this Agreement is void or voidable." 561 U.S. at 66; *see also Danley* 680 Fed. App'x at 398 (finding the parties "clearly and unmistakably" intended for an arbitrator to decide "gateway issues relative to their claims" where the delegation provided "all claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision") (alterations and citations omitted).

The delegation provision in this case largely parallels the delegation language of *Rent-A-Center* and *Danley*. By including "all issues of arbitrability, including but not limited to . . . all grounds as may exist at law or in equity for the revocation of any contract [and] the interpretation or application of this" Arbitration Agreement, the parties delegated questions about the Arbitration Agreement's validity to arbitration. *Arbitration Agreement* ¶ 1. This delegation provision operates as "an

additional, antecedent agreement" under the FAA, since Mr. Moss attacks the contract as a whole, not the delegation provision. *See Rent-A-Center*, 561 U.S. at 70. Accordingly, whether Arbitration Agreement remains enforceable and valid is for the arbitrator, not this Court, to decide. *See Buckeye*, 546 U.S. at 448; *Mountain Valley Prop., Inc. v. Applied Risk Servs., Inc.*, No. 1:15-cv-00187-DBH, 2015 WL 13729967, at *6 (D. Me. Dec. 22, 2015), *report and recommendation adopted as modified*, No. 1:15-cv-187-DBH, 2016 WL 755614, at *1-2 (D. Me. Feb. 25, 2016).

This conclusion is buttressed by the Arbitration Agreement's express reference to the JAMS Employment Arbitration Rules and Procedures. *Arbitration Agreement* ¶ 3. Rule 11(b) of the JAMS Employment Arbitration Rules and Procedures states that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS Employment Arbitration Rules and Procedures, Rule 11(b), https://www.jamsadr.com/files/Uploads/Documents/JAMSRules/JAMS_employment_arbitration_rules-2014.pdf. Courts have consistently concluded that the parties' incorporation of a specific set of rules and procedures for arbitration constitutes clear and unmistakable intent to delegate to the arbitrator to resolve questions of arbitrability and jurisdiction. *Awuah*, 554 F.3d at 11-12 (stating that incorporation of the Rules of the American Arbitration Association, which provides in part that an arbitrator may "rule on his or

her own jurisdiction", demonstrates the parties clear and unmistakable intent for the arbitrator to decide the validity of the arbitration agreement but affirming denial of motion to compel arbitration on other grounds); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989) ("These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a *prima facie* agreement to arbitrate whose continued existence and validity is being questioned") (italics in original); *Tannatt v. Varonis Sys., Inc.*, No. CV 18-12589-JGD, 2019 WL 830482, at *5 (D. Mass. Feb. 21, 2019); *Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237, 248-49 (D. Mass. 2015).

As to Mr. Moss's claims from 2016 to 2017, the Court concludes the parties delegated to the arbitrator whether the Arbitration Agreement remains valid in light of the Employment Agreement.

### B. Whether the Arbitration Agreement Encompasses Mr. Moss's ` Claims from 2010 to 2015

This does not end the matter. While the Arbitration Agreement's delegation provision bars the Court from determining whether the Employment Agreement supersedes the Arbitration Agreement as to Mr. Moss's claims from 2016 forward, Mr. Moss asserts "[t]here is no evidence that during the time Mr. Moss was employed by Brock between 2010 and October 2015, he ever consented to arbitration of any claims[,]" and that his "entry into the Employment Agreement with Brock on November 28, 2016 rendered any agreement as to Brock's Dispute Resolution Policy a nullity." *Pl.'s Opp'n* at 11. Brock Services points to the Arbitration Agreement's language of all claims "now existing or later arising" and says Mr. Moss

"unequivocally agreed that any claim he may have had related to his prior employment from 2010 to 2015, whether known or unknown at the time, was thereafter subject to mandatory arbitration." *Def.'s Reply* at 7.

Although Mr. Moss says there is no evidence that he ever consented to arbitration during his time at Brock Services from 2010 to 2015, the Arbitration Agreement applies to "[e]ach, every, any and all claims, disputes, and/or controversies now existing or later arising between or among the Parties . . . whether now known or unknown." *Arbitration Agreement* ¶ 1. Mr. Moss's claims existed at the time he signed the Arbitration Agreement on July 27, 2016, and his 2010 to 2015 claims are between himself and Brock Services and stemmed from his employment at Brock Services. These claims predated Mr. Moss's signing of the Arbitration Agreement, but when he signed the agreement on July 27, 2016, he was agreeing to submit any existing claims, whether known or unknown, to arbitration. Courts faced with similarly broad arbitration provisions have concluded that they encompass claims which pre-date the execution of their encompassing agreements. *See Levin v. Alms & Assoc., Inc.,* 634 F.3d 260, 267-68 (4th Cir. 2011); *Kristian,* 446 F.3d at 33-36; *Sanfilippo v. Tinder, Inc.,* No. 2:18-cv-08372-AB (JEMx), 2018 WL 6681197, at *5 (C.D. Cal. Dec. 18, 2018); *Trujillo v. Gomez,* 2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015). Furthermore, issues pertaining to the scope of an arbitration agreement are construed in favor of arbitration. *Lamps Plus, Inc. v. Var*ela, 139 S. Ct. 1407, 1418 (2019).

The Court concludes the parties delegated to an arbitrator whether the Arbitration Agreement remains valid in light of Employment Agreement to arbitrate all Mr. Moss's claims.

### C.    Scope and Waiver

Mr. Moss does not argue his claims against Brock Services are outside the Arbitration Agreement's scope, and given the Arbitration Agreement's broad language, Mr. Moss's claims fall within its purview. *AT & Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Mr. Moss does not assert Brock Services has waived its right to compel arbitration, and the Court concludes Brock Services has not waived its right to compel arbitration.

### D.    Stay or Dismissal

In this Circuit, courts retain the discretion to dismiss or stay a case when the issues before a court are arbitrable. *Baker v. Securitas Sec. Servs. USA, Inc.*, 432 F. Supp. 2d 120, 127 (D. Me. 2006) (citing *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141 156 n.21 (1st Cir. 1998)). Dismissal has many advantages when all the issues are arbitrable. *See Boulet v. Bangor Sec., Inc.,* 324 F. Supp. 2d 120, 127 (D. Me. 2004). Typically, the Court will dismiss the lawsuit unless there is a separate justification for retaining jurisdiction, such as a potential statute of limitations issue. *Kourembanas v. InterCoast Colls.*, No. 2:17-cv-00331, 2019 U.S. Dist. LEXIS 73215, at *3-4 (D. Me. May 1, 2019). Here. Mr. Moss's claims may present statute of limitations complications. Moreover, as the Court is staying *Clough v. Brock Services, LLC*, 2:19-cr-00050-JAW, it makes sense to address these two cases, which are

similar, in the same fashion to avoid inconsistent decisions. Accordingly, the Court concludes staying the case is appropriate.

At the same time, as this case and *Clough* will remain on the Court's active docket, the Court does not want to lose track of it and its companion and hereby ORDERS the parties to file with the Court a status report on their progress with arbitration within ninety days of the date of this order and every ninety days thereafter until the arbitration is over.

## V.    CONCLUSION

The Court GRANTS Brock Services' Motion to Compel Arbitration (ECF No. 13).[3] The Court STAYS this action pending the outcome of arbitration and ORDERS counsel to prepare and file a joint status report by November 12, 2019  and every ninety days thereafter until the arbitration is resolved.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of August, 2019

---

[3]    As is apparent from this opinion, by granting the motion to compel arbitration, the Court is expressing no view as to whether an arbitrator should or should not conclude that the claims are arbitrable.